IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOE M. JUNGUZZA<br><br>      v.<br><br>GEMALTO, INC. | CIVIL ACTION<br><br>NO.  13-4422 |

<u>MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

J. Baylson                                                                                      August 6, 2014

  Defendant moves for summary judgment on Plaintiff's claims for wrongful termination under the Uniformed Services Employment and Re-Employment Act, the Pennsylvania Military Leave of Absence Act, retaliation, and violations of the Pennsylvania Wage Payment and Collection Law.

<h2 style="text-align:center">I.  FACTUAL BACKGROUND & PROCEDURAL HISTORY</h2>

  Plaintiff was a member of the United States Army Reserves at the time of his employment at Defendant.  Pl's SOF 4.  Defendant is Gemalto, Inc., a large international company based in Austin Texas.  Plaintiff began working at Defendant's Montgomeryville location in December 2008 as a process team coach.  In October 2010 Plaintiff was promoted to manager of customer service and sales operations and worked under the supervision of Sebastian Cano.  Pl's SOF ¶6.

  Near the end of 2011 Defendant's finance department noticed serious billing discrepancies in an account Plaintiff was responsible for managing.  Cano Dep. 31:9-12.  A customer was not properly invoiced for $500,000 worth of goods.  Plaintiff was initially tasked with remedying this problem. Pl's SOF ¶¶11-12.   In October 2012 Defendant transferred Ruby Goh to the Montgomeryville office, and she took over responsibility for sorting out the billing discrepancy.   Pl's SOF ¶¶17-20.

In December 2012 Goh was promoted and became Plaintiff's new supervisor. Pl's SOF ¶21.  Goh was aware of Plaintiff's army reserve status and twice made a reference to Plaintiff's "second job."  In January or February 2013, she asked Plaintiff why he had a "two jobs." Junguzza Dep. 115:5-15.  Goh again said in April, "I don't understand why you would have two jobs," to Plaintiff in a phone "conversation where she said she was so dedicated to the company . . . sort of implying [that Plaintiff] had a lack of dedication to the company because she worked 20 hours a day."  Junguzza Dep. 117:17-118:7.

Goh also complained to her manager and to HR that Plaintiff called her names her behind her back and was undermining her with the rest of the staff.  Cano Dep. 87:1-90:23.  In March 2013 Goh told Plaintiff he would not be receiving a merit pay raise because of the significant write-off for the invoicing discrepancy.  Pl's Ex. S.  When Plaintiff took the following day off, as permitted by company policy, Goh reported this to Cano who understood her email to be "hint[ing] to" "see there is a problem." Cano Dep. 123:1-10, Pl's Ex. T.

Around April 22, 2013, Plaintiff informed Goh that that he would be required to attend a ten-day army reserves training in May 2013.  Junguzza Dep. 117:15-23.  Goh responded that May was not a good time because they were in the middle of launching a new product line. Plaintiff agreed to attend the June exercises instead.  Junguzza Dep. 92:6-96:6.

 Plaintiff attended training from June 10 through June 21, and returned to work on June 24.  Pl's Ex. U.  Defendant terminated Plaintiff one week later, on July 2, 2013.  Def's SOF ¶60. Plaintiff produced an email from the VP of Human Resources to Plaintiff's supervisor Cano showing the company had decided to terminate Plaintiff on May 14, 2013.  Pl's Ex. V ("As discussed yesterday, we have agreed with Philippe Vallee to release Joe Junguzza.").

In his Amended Complaint, Plaintiff brought claims against Defendant for discrimination under the Uniformed Services Employment and Re-Employment Act (USERRA), wrongful termination under the Pennsylvania Military Leave of Absence Act (PMAA), and for violations of the Pennsylvania Wage Payment and Collection Law  (WPCL).  (ECF 21).  Defendant filed a motion for summary judgment on all claims on May 1, 2014.  (ECF 26).  This motion is presently before the Court.

## II.      THE PARTIES' ARGUMENTS

Defendant contends Plaintiff has not produced any evidence that his military service was motivating factor in his termination.  Plaintiff responds that the following evidence supports an interference of discrimination: Goh's two comments about his second job; the temporal proximity between when he gave notice of his annual training and Defendant's decision to terminate him; Goh's unsubstantiated accusations Plaintiff called her names; and Defendant gave inconsistent reasons given for terminating him.

Defendant contends Plaintiff cannot show its failure to pay severance was retaliatory or that it owed Plaintiff severance because the agreement to pay severance required Plaintiff to sign a release of claims, which he did not do.  Plaintiff responds that it is reasonable to infer the requirement to release claims only related to wage and hour claims, not to claims of discrimination.

## III.      ANALYSIS

### A. Wrongful termination

USERRA prohibits "discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3). Under the Act

> [a] person who is a member of, applies to be a member of, performs, has
> performed, applies to perform, or has an obligation to perform service in a

> uniformed service shall not be denied initial employment, reemployment,
> retention in employment, promotion, or any benefit of employment by an
> employer on the basis of that membership, application for membership,
> performance of service, application for service, or obligation.

38 U.S.C. § 4311(a).  An employer violates USERRA if "the person's membership [in the military] is a motivating factor in the employer's action."  38 U.S.C. § 4311(a).  The Pennsylvania Military Leave of Absence Act provides similar protection to service members called to military duty.  51 P.S. § 7309.  In a nonpresidential opinion the Third Circuit has held "under PMAA's very terms, we believe PMAA should be interpreted in conformity with USERRA, and we will apply the same two-step burden-shifting framework to claims brought under PMAA as we do to claims under USERRA.  Murphy v. Radnor Twp., 542 F. App'x 173, 180 (3d Cir. 2013).

USERRA establishes a two-step burden-shifting framework.  First, the plaintiff must show that the "'employee's military service was a substantial or motivating factor in the adverse employment action.'"  Murphy, 542 F. App'x at 176 (quoting Sheehan v. Dep't of Navy, 240 F.3d 1009, 1013 (Fed. Cir. 2001)).  To avoid liability, the employer must prove that it would have taken the same action absent the plaintiff's military service.  Id.

In Murphy v. Radnor Twp., the Third Circuit held a plaintiff produced sufficient evidence that his service was a motivating factor because during his job interview he was asked about his military obligations, how many days he would need to be absent, and how the employer would be affected by his military obligations.  542 F. App'x at 175-76.  The township manager told the plaintiff that he was one of the top candidates but the town board had "serious reservations about his ongoing military obligations" and he did not get a second interview.  Id.  This decision is the only Third Circuit case that considered whether the plaintiff's service was a motivating factor.

The Supreme Court considered whether the discriminatory motive by one of the employer's agents qualified as a motivating factor in the employer's decision to terminate.  Staub v. Proctor Hosp., 131 S. Ct. 1186, 1191 (2011) (reversing summary judgment for the defendant). In Staub, one of the plaintiff's immediate supervisors exhibited antimilitary animus by scheduling him for additional shifts to "pay back the department for everyone else having to bend over backwards to cover his schedule for the Reserves," told a co-worker his "military duty had been a strain on the department," and asked the co-worker to help "get rid of him."  Id. at 1189 (internal quotations and alterations omitted).  The plaintiff was terminated after one of his supervisors reported that he violated a term of a corrective action plan, and his employer relied on this report in deciding to terminate him.  Id. at 1189.  The Court held "that if a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA."  Id. at 1194 ("An employer's authority to reward, punish, or dismiss is often allocated among multiple agents. The one who makes the ultimate decision does so on the basis of performance assessments by other supervisors.").

Here, Defendant presented testimony that Cano decided to terminate Plaintiff.  Plaintiff has not presented any evidence that Goh was involved in the decision, but under Staub her conduct can be the basis of liability if it was the proximate cause of Plaintiff's termination.

Plaintiff has presented some evidence supporting an inference of antimilitary animus through Goh's comments regarding Plaintiff's "second job" and his lack of commitment to his job at Gemalto.  Plaintiff has also presented circumstantial evidence that could support an inference that Goh's animus was a motivating factor in his termination.  First, the evidence shows Defendant was aware of the significant invoicing error in 2011, but as late as December of

2012 Defendant had no intention of terminating Plaintiff.  Cano Dep. 31:9-12 & 86:6-10 (explaining he hat "the intention of keeping Mr. Junguzza as an employee at the time of the [December 2013] meeting" because it was understood "Joe had a role on the team . . . And it was discussed with HR").  Second, it was not until Goh became Plaintiff's direct supervisor, and told Cano that Plaintiff was calling her names and undermining her with other employees that Gemalto supervisors discussed terminating Plaintiff.  Cano Dep. 87:1-90:23 (testifying that he got these reports from Goh in January and February "[b]efore I really made the decision that we should terminate [Plaintiff]" and after that "[w]e decided to terminate him.").  Third, Plaintiff has pointed to the temporal proximity between his request for leave to attend training in late April and the first record showing Defendant decided to terminate him on May 14.  Plaintiff was terminated within a week of returning from training.  Pl's Ex. V.  Finally, Plaintiff has produced evidence that prior to Goh's arrival he was consistently granted leave for training without issue, and had positive performance reviews.  Indeed, he received routinely a merit pay increase before Goh became his manager.  Pl's Ex. S.

This evidence is not as strong as the Commission's questions about service in Murphy or the clear expressions of animus in Staub.  But Plaintiff has presented some evidence that a reasonable jury could find Goh's animus toward his military service was a motivating factor in Defendant's decision to terminate him.

Defendant contends it has produced uncontroverted evidence it would have made the same decision without Goh's conduct.  But several questions of fact remain regarding the reasons for Plaintiff's termination.  Defendant has presented emails that show Cano and others were preparing for Plaintiff's departure in March 2013, but the emails discuss a concern that Plaintiff would resign before a replacement was trained in his department and do not express an

intent to terminate him.  Pl's Ex. T.  Moreover, these emails were exchanged in March, after Goh

began managing Plaintiff.  Finally, Defendant gave inconsistent reasons for terminating Plaintiff,

and did not state his performance as a reason on the termination form.  Pl's Ex. W (showing the

reason as "other" and recording in summary notes that "I told him he was not being given a

reason" for his termination).

**B. USERRA Retaliation**

Defendant contends Plaintiff cannot state a claim for USERRA retaliation based on

Defendant's withholding of severance because the payment of severance was expressly

conditioned on signing a release of claims.  Plaintiff contends it is reasonable to assume the

release requirement noted in the Employee Handbook only referred to waiving claims for wages

or benefits, not claims based on employment discrimination.

Plaintiff has not produced any evidence supporting this theory that conditioning

severance on a waiver of claims was an adverse action.  The Employee Handbook establishes a

universal severance policy for all employees of a particular class: "Severance is provided . . .

upon receipt of a fully-executed release." Pl's Ex. Z.  Plaintiff has not produced evidence that

other severance releases were limited to wage and hour claims, and the Handbook does not

include any language indicating the required release was limited to wage and hour claims.

Defendant's director of Human Resources submitted an affidavit testifying that same

release was required for all terminated employees to receive severance.  Def's Ex. E.  Plaintiff

has not produced evidence that calls into question Defendant's evidence.  Defendant also

submitted a copy of the release of claims agreement that it asked Plaintiff to sign which

enumerates nearly every applicable civil rights and labor law, in addition to all other common

law tort and contract claims. Def's Ex. E.  Most importantly, the release does not specifically

name USERRA, but requires waiver of "[a]ny other claim, whether based on federal, state or local civil or human rights law."  Def's Ex. E.

This evidence does not raise an inference of retaliation.  The central problem is the lack of an adverse action.  It is not impermissible to require a release of claims in exchange for severance payments.  Coventry v. U.S. Steel Corp., 856 F.2d 514, 521 (3d Cir. 1988) (holding the release must be knowing and willing).  Since the contractual right to severance was clearly conditioned on the signing of a release at the outset of his employment, Plaintiff cannot show that implementing this requirement was an adverse action, let alone a retaliatory one.

**D. Pennsylvania Wage Payment and Collection Law**

The Pennsylvania Wage Payment and Collection Law (WPCL) requires employers to pay all "wages or compensation earned" up to the date of separation.  43 P.S. § 260.5.  The agreement between the parties determines when wages are earned.  Wilson v. Homestead Valve Mfg. Co., 217 F.2d 792, 797 (3d Cir. 1954) ("Under the law of Pennsylvania the compensation to which the plaintiff was entitled depends upon the language of the employment contract, construing it as a whole, and gathering from the four corners of the contract the mutual intention of the parties."); O'Donnell v. Passport Health Commc'ns, Inc., No. 11-3231, 2013 WL 1482621 (E.D. Pa. Apr. 10, 2013) aff'd, 13-2607, 2014 WL 1259650 (3d Cir. Mar. 28, 2014) (considering whether a commission payment was a wage owed under the WPCL); Sendi v. NCR Comten, Inc., 619 F. Supp. 1577, 1579 (E.D. Pa. 1985) aff'd sub nom. Sendi v. N.C.R. Comten, Inc., 800 F.2d 1138 (3d Cir. 1986) ("The contract between the parties governs whether specific wages or commissions are 'earned' under the WPCL."); Heimenz v. Pennsylvania Power & Light Co., 75 Pa. D. & C.2d 405, 406 (Pa. Com. Pl. 1976)  ("Whether the severance pay . . . is wages

according to the statutory definition can be determined by the terms of the contract under which this action was brought.").

Plaintiff contends he was owed severance payments by Defendant.  To determine whether this was compensation under the WCPL, this Court must look to the agreement between Plaintiff and Defendant.  The parties agree the Employee Handbook contains the agreement for severance payments: "Severance is provided in a one-time lump sum payment upon receipt of a fully-executed release."  Pl's Ex. Z.  Plaintiff admits he did not sign the release.  Pl's Resp. to Def's SOF 68.  Plaintiff has not produced any evidence showing severance was due despite his failure to execute a release or that the parties understood there was any exception to this requirement.  Under the unambiguous terms of the contract, it is undisputed that Plaintiff failed to perform a condition precedent to receipt of severance payment, so he is not entitled to the payment.  Since the compensation was not earned under the WCPL, Defendant's motion for summary judgment shall be granted on this claim.

## IV.    CONCLUSION

Plaintiff has produced sufficient evidence to raise a genuine question of fact whether his military service was a motivating factor in his termination.  But Plaintiff has not presented any evidence that failure to pay severance was an adverse action, or that severance was earned compensation under the terms of his agreement with Defendant.  Accordingly, Defendant's motion will be denied as to Plaintiff's claims for wrongful termination under the USERRA and the PMAA.  Defendant's motion for summary judgment will be granted as to Plaintiff's claims for retaliation under the USERRA and for compensation under the WPCL.

O:\CIVIL 13\13-4422 junguzza v. gemalto\13cv4422.msj.memo.docx